**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **TESSONICS CORP.** and **TESSONICS INC.,** | Case No. _____ |
| Plaintiffs, | Hon. _____ |
| v. | **JURY TRIAL DEMANDED** |
| **CRAFTED TECHNOLOGIES LTD.,** **ALEXEY DENISOV, MATTHEW** **McREYNOLDS,** and **ADAM TURTON,** | |
| Defendants. | |

## COMPLAINT AND DEMAND FOR JURY TRAIL

Plaintiffs Tessonics Corp. and Tessonics Inc. (together, **"Tessonics"**), by their attorneys, for their Complaint against Defendants Crafted Technologies Ltd. ("Crafted"), Alexey Denisov, Matthew McReynolds, and Adam Turton (the three individuals, the "Individual Defendants" and all defendants are collectively referred to as "Defendants"), allege as follows:

### I.       NATURE OF THE ACTION

1.       This is an action for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*; patent infringement under the Patent Act, 35 U.S.C. § 271 *et seq.*; misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq., and the Michigan Uniform Trade Secrets Act, M.C.L. § 445.1901 *et seq.*; and conversion and/or embezzlement, breach of duty of loyalty, and breach of fiduciary duty under Michigan law.

2.       Tessonics is a developer of advanced ultrasonic imaging and non-destructive testing ("NDT") hardware and software for industrial and medical applications. The Individual Defendants are three former Tessonics personnel who, while still employed by Tessonics, secretly formed Crafted to compete directly with Tessonics. As detailed below and confirmed by forensic

1

analysis of Tessonics devices that the Individual Defendants used, the Defendants did not build a competing product through independent effort. Instead, they copied Tessonics' proprietary source code (in one instance under an explicit instruction to reproduce Tessonics' software logic "verbatim"), misappropriated Tessonics' confidential technical and business information, practiced a Tessonics-owned United States patent, and diverted Tessonics' own hardware into a competing device that Defendants have offered for sale and sold in the United States.

3. Defendants have offered Crafted's competing product for sale to a customer in this District, have sold at least one unit incorporating hardware stolen from Tessonics to a customer in Alabama, and Defendants have imported and continue to import Crafted's products into the United States from Canada. Tessonics brings this action to stop that ongoing harm and to recover the damages it has suffered.

## II. THE PARTIES

4. Plaintiff Tessonics Corp. is a Michigan corporation with its principal place of business at 2019 Hazel Street, Birmingham, Michigan 48009. Tessonics Corp. owns United States Patent No. 9,933,397 and conducts business in the United States, including the provision of ultrasonic inspection products and related services to customers in this District and elsewhere in the United States.

5. Plaintiff Tessonics Inc. is a corporation organized under the laws of Ontario, Canada, with its principal place of business at 787 Ouellette Avenue, Windsor, Ontario, N9A 4J4, Canada. Tessonics Inc. owns the copyrights and the trade secrets asserted in this Complaint and owned the hardware that is the subject of the conversion and/or embezzlement claims.

6. Defendant Crafted Technologies Ltd. is a corporation organized under the laws of Ontario, Canada, with a principal place of business at 2935 Sandlewood Court, LaSalle, Ontario, N9H 2S3, Canada. Crafted was incorporated on or about October 31, 2024—while all three

2

Individual Defendants were still employed by Tessonics—to develop, manufacture, and sell ultrasonic NDT equipment in competition with Tessonics. On information and belief, Crafted manufactures or assembles its products in Canada and imports them into the United States for sale.

7.      Defendant Alexey Denisov is an individual residing at 2935 Sandlewood Court, LaSalle, Ontario, N9H 2S3, Canada. Denisov was employed by Tessonics from on or about January 17, 2005 until January 10, 2025, most recently as Senior Software Engineer, and is a founder and the President of Crafted.

8.      Defendant Matthew McReynolds is an individual residing at 176 Shannon Place, Tecumseh, Ontario, N8N 4J3, Canada. McReynolds was employed by Tessonics Corp. from on or about October 2010 until January 10, 2025 as a Sales Representative; during that employment he worked for Tessonics Corp. in the United States under an E-2 visa and was frequently physically present in Michigan. McReynolds is a founder and the Chief Operating Officer of Crafted.

9.      Defendant Adam Turton is an individual residing at 8285 Malden Road, LaSalle, Ontario, N9J 2V5, Canada. Turton was employed by Tessonics from on or about October 30, 2017 until January 10, 2025, most recently as Engineering Manager responsible for electronics and hardware development, and is a founder and director of Crafted.

## III.     JURISDICTION AND VENUE

10.     This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) over the copyright and patent claims and the claim under the Digital Millennium Copyright Act, 17 U.S.C. § 1202; under 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c) over the federal trade-secret claim; and under 28 U.S.C. § 1367(a) over the related Michigan trade-secret, conversion and/or embezzlement, breach of duty of loyalty, tortious-interference, and civil-conspiracy claims, which form part of the same case or controversy.

3

11.     This Court has personal jurisdiction over Defendant McReynolds because, among other things, he was employed in the United States by Tessonics Corp. under an E-2 visa for approximately fourteen years, was regularly and purposefully present in Michigan in connection with that employment, made or directed an offer to sell the accused Crafted product to a customer in this District, and personally attended a meeting in Flat Rock, Michigan, in this District, in furtherance of the conduct alleged herein.

12.     This Court has personal jurisdiction over Defendant Crafted because Crafted purposefully directed business activities at this District and the United States, including by offering the accused product for sale to a customer in this District (through McReynolds), attending the Flat Rock, Michigan meeting, selling at least one accused unit to a customer in the United States, and importing accused products into the United States.

13.     This Court has personal jurisdiction over Defendants Denisov and Turton as to the federal claims (copyright, the Digital Millennium Copyright Act, patent, and trade secrets) pursuant to Federal Rule of Civil Procedure 4(k)(2). Each is a resident of Canada not subject to the general jurisdiction of the courts of any single State, and each has sufficient aggregate contacts with the United States as a whole, arising out of the claims, to satisfy due process: Denisov personally copied and integrated Tessonics' copyrighted source code into the accused product that Defendants imported, offered for sale, and sold in the United States, and altered the copyright management information in that code; and Turton caused Tessonics' trade-secret designs and a 69-element transducer printed circuit board to be diverted into the accused unit that Defendants imported and sold in the United States. The exercise of jurisdiction over each is consistent with the United States Constitution and laws.

14. This Court additionally has personal jurisdiction over Defendant Crafted under Rule 4(k)(2) for the same reasons, and over all Defendants by way of pendent personal jurisdiction as to the related state-law claims for conversion and/or embezzlement, tortious interference, and civil conspiracy, which arise from the same common nucleus of operative fact as the federal claims over which the Court has jurisdiction.

15. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c)(3) and 1400(a) and (b). A substantial part of the events giving rise to the claims occurred in this District, including the offer for sale of the accused product to a customer in this District and the Flat Rock, Michigan meeting. In addition, Defendant Crafted is an alien corporation that may be sued in any judicial district under 28 U.S.C. § 1391(c)(3), and the Individual Defendants are not residents of the United States.

## IV. FACTUAL BACKGROUND

### A. Tessonics and Its Proprietary Technology

16. Founded in Windsor, Ontario in 2005, Tessonics is a recognized leader in high-resolution ultrasonic imaging and non-destructive testing (NDT), supplying ultrasonic weld- and bond-inspection systems to automotive original equipment manufacturers and suppliers, as well as to the aerospace, agricultural, and medical sectors. Tessonics' products and services are provided to customers in the United States, including in this District.

17. Tessonics' competitive position rests on proprietary technology developed over two decades, including ultrasonic signal-generation, acquisition, and processing software; hardware-control libraries; calibration and validation methods; probe and transducer designs; and customer- and supplier-specific specifications. Among Tessonics' software assets are the "Ultra Digital Signal Processing" (UDSP) and "Smart Robotics Systems" (SRS) codebases and the "boardlib" hardware-control library and "board-front" front-end software.

**B.  Tessonics Registered Copyrights**

18.      Tessonics Inc. is the author (as work made for hire) and owner of the copyrights in the following original computer programs, each of which is the subject of a United States Copyright Registration (collectively, the "Copyrighted Works"):

| Registration No. | Title of Work | Exhibit |
|---|---|---|
| TX 9-600-178 | Ultra Digital Signal Processing (UDSP) v0.1.0 | Exhibit 1 |
| TX 9-598-484 | Ultra Digital Signal Processing (UDSP) v0.5.0 | Exhibit 2 |
| TX 9-598-910 | Smart Robotics Systems (SRS) v0.2.0 | Exhibit 3 |
| TX 9-598-482 | Smart Robotics Systems (SRS) v0.5.0-beta.1 | Exhibit 4 |

19.      Tessonics Inc. holds valid Certificates of Registration for each of the Copyrighted Works and has satisfied any registration prerequisite to suit under 17 U.S.C. § 411(a). Tessonics Inc. therefore owns valid United States copyright registrations for the Copyrighted Works, and all conditions precedent to suit under the Copyright Act have been satisfied.

**C.  Tessonics '397 Patent**

20.      Tessonics Corp. is the owner by assignment of United States Patent No. 9,933,397 B2, entitled "METHOD AND SYSTEM FOR ASSESSING THE QUALITY OF ADHESIVELY BONDED JOINTS USING ULTRASONIC WAVES," which issued on April 3, 2018 (the "'397 Patent"). The '397 Patent is valid, enforceable, and in force, and all maintenance fees due have been paid. A copy of the '397 Patent is attached as Exhibit 5. Tessonics Corp. is the sole owner of all right, title, and interest in the '397 Patent, including the exclusive right to sue for past, present, and future infringement.

21.      On or about June 6, 2026, Tessonics, through counsel, sent Defendants a cease-and-desist letter identifying the '397 Patent and Tessonics' other intellectual property and demanding that Defendants stop the infringing and unlawful conduct alleged herein. Defendants

6

received the letter on or about June 6, 2026. Defendants have continued their infringing and unlawful conduct notwithstanding that notice.

22. The '397 Patent is directed to ultrasonic methods for assessing the quality of adhesively-bonded lap joints. As relevant here, independent claim 1 recites a method that uses a reference sample—having metal plates with the same properties as the joint under test and an adhesive layer of varying thickness—to record a reference waveform, then transmits wideband ultrasonic waves into the bonded joint, records the reflected waves, analyzes those reflected waves together with the reference waveform to determine an informative parameter, and compares that parameter to a threshold value to assess the quality of the joint.

23. Claim 1 of the '397 Patent recites:

A method for assessment of quality of an adhesively-bonded lap joint, the joint including a first curved metal plate, a second curved metal plate and an adhesive, the method including the steps of:

a) sending ultrasonic waves normally to the surface of a sample outside of the joint, where the sample has a first sample curved metal plate with the same properties as does the first curved metal plate at an assessment point of the joint, and wherein the sample has a second sample curved metal plate with the same properties as does the second curved metal plate, and wherein the sample has an adhesive having a thickness that varies along the sample;

b) recording reflected waves from the sample as a reference waveform;

c) sending wideband ultrasonic waves normally to the surface of the joint at an assessment point;

d) recording reflected waves of the ultrasonic waves from the joint;

e) analyzing a waveform of the reflected waves from the joint and reference waveform to determine an informative parameter; and

f) comparing the informative parameter with a threshold value to assess quality of the joint.

**D. The Individual Defendants Secretly Formed Crafted While Employed by Tessonics**

24.     In their respective roles, the Individual Defendants were entrusted with and exercised authority over Tessonics' most sensitive technical and business information, including its source code, hardware designs, signal-processing parameters, and customer and supplier relationships.

25.     While still employed by Tessonics, the Individual Defendants incorporated Crafted (on or about October 31, 2024) and took concrete steps to start up a competing business using Tessonics' resources. Forensic analysis recovered, among other things, a Crafted credit-card application created on or about November 29, 2024 listing Denisov as President of Crafted and McReynolds as Director of Crafted, Crafted branding and logo files, and a January 8, 2025 purchase order from Crafted to a Tessonics transducer supplier. These were all created or stored on Tessonics-issued equipment before the Individual Defendants resigned.

26.     The Individual Defendants resigned from Tessonics, in coordinated fashion, on or about January 10, 2025.

**E. The Defendants Copied Tessonics' Source Code**

27.     Forensic examination of Tessonics-issued devices that were used by Denisov used established a systematic, instruction-by-instruction replica of Tessonics' proprietary software for use in Crafted's competing "Unison" product, including the following:

(a) Tessonics' UDSP and related repositories were studied and then duplicated; a Crafted "udsp" repository mirrored the Tessonics original, and Tessonics' "udsp" and "implus" repositories were incorporated as source code submodules within Crafted's projects.

(b) Tessonics' "boardlib" C++ hardware-control library was compiled from Tessonics source code and integrated into Crafted's Unison product through a software wrapper ("go-boardlib").

8

(c) A custom comparison tool ("gitparator") was created specifically to compare the Tessonics and Crafted codebases, generating a detailed comparison report on or about November 4, 2024. The configuration file controlling product labeling was modified to change the copyright notice and company name from "Tessonics Inc." to "Crafted Technologies Inc.," while the underlying code originated from Tessonics.

(d) An artificial-intelligence coding assistant (Cursor) was directed to read Tessonics' "board-front" and "boardlib" source code present on the system and to reproduce its functionality feature-by-feature—including, in at least one instance, an explicit instruction to reproduce Tessonics' logic "verbatim."

(e) Development artifacts evidencing the competing work were deleted from the Tessonics-issued device before it was returned, but were recoverable from a Volume Shadow Copy dated the morning of the coordinated resignations.

28. This conduct is not consistent with independent development. It reflects deliberate copying of Tessonics' protected expression and proprietary code into Crafted's competing product.

29. Defendants were under a duty to preserve evidence relating to their activities concerning Tessonics technology, source code, customers, suppliers, and business opportunities. Forensic examination revealed efforts to delete development artifacts and related materials from Tessonics-issued devices.

**F. The Defendants Misappropriated Tessonics' Trade Secrets**

30. In addition to the source code described above, on the day of their departure, the Individual Defendants exfiltrated highly sensitive Tessonics materials. On or about January 10, 2025, within minutes, three emails were forwarded from Denisov's Tessonics account to his personal account which include the following: (i) third-party proprietary firmware/IP-license materials licensed to Tessonics; (ii) client correspondence containing confidential technical requirements and contacts; and (iii) client correspondence containing sales-pipeline intelligence and technical requirements. Forensic review also documented McReynolds' forwarding of Tessonics customer lists and other confidential business information to his personal account.

31.     Tessonics' trade secrets that Defendants misappropriated include, without limitation, the following categories of non-public information, the contents of which are further evidenced in the forensic record and which Tessonics will identify with greater particularity as discovery proceeds:

(a) **Source code and software architecture.** The proprietary source code, organization, and architecture of Tessonics' UDSP and SRS codebases, the boardlib C++ hardware-control library, and the board-front front-end application, including non-public implementation details such as the hardware-status monitoring thread, probe detection and descriptor persistence, channel-map handling, the DAQ service implementation, acquisition types, and signal-parameter handling.

(b) **Signal-processing methods and parameters.** Tessonics' ultrasonic signal-generation, acquisition, and processing approaches, together with the calibration, validation, and tuning parameters—including the proprietary probe-validation workflow Tessonics refers to internally as "BLESSED"—developed and refined through years of internal testing and field deployment.

(c) **Hardware and transducer designs.** Board layouts, schematics, component specifications, cabling solutions, and transducer designs and specifications, including the design and specifications of the 69-element transducer.

(d) **Supplier information.** The identities, specifications, pricing, and development history of Tessonics' suppliers, including transducer and cabling suppliers, and the proprietary requirements embodied in those supplier relationships.

(e) **Customer information.** Customer identities and contacts, confidential customer technical requirements, pricing, and sales-pipeline information, including the client requirements and correspondence of two of Tessonics' customers and the customer contact lists compiled for Tessonics' product-development surveys.

(f) **Licensed confidential third-party materials.** Proprietary firmware and intellectual-property licensing materials licensed to Tessonics in confidence.

(g) **Forward-looking research and development.** Tessonics' next-generation "F3" development plans, system architectures, design trade-offs, and unresolved technical problems. Additionally, both Denisov and Turton were in Tessonics' F-2 Quality Improvement Meetings and used information from these meetings in Crafted's products.

32.     Tessonics derives independent economic value from these trade secrets not being generally known to, or readily ascertainable by, competitors, and took reasonable measures to maintain their secrecy, including requiring employees to execute confidentiality and proprietary-rights agreements; restricting access to confidential information on a need-to-know basis; maintaining source code in access-controlled repositories; issuing company-controlled computers and accounts; implementing password protections and access logs; marking confidential materials as confidential where appropriate; and requiring third-party licensors and business partners to maintain confidentiality. The trade secrets relate to products and services used in, and intended for use in, interstate and foreign commerce, including products imported into and sold in the United States.

### G.  The Defendants Converted Tessonics' 69-Element Transducer Hardware

33.     While employed by Tessonics as Engineering Manager, Defendant Turton caused Tessonics to order, take delivery of, and pay for at least 20 printed circuit boards for a 69-element ultrasonic transducer (the "PCBs"), which thereby became the property of Tessonics Inc. Tessonics does not itself produce a 69-element transducer.

34.     The PCBs are no longer at Tessonics. On information and belief, the Defendants wrongfully took and diverted the PCBs and incorporated at least one of them into the Crafted device that was sold to a customer in Alabama. Consistent with this, Crafted's public materials indicate that Crafted uses a 69-element transducer in its development, and forensic and supplier records show post-resignation purchases of multiple transducers by McReynolds (using a Crafted email address) from a Tessonics supplier.

### H.  Defendants' Infringing and Wrongful Acts in the United States

35.     Defendants have committed acts of infringement and other wrongful conduct in the United States, including: (i) offering the accused Crafted product for sale to a customer in this

District; (ii) selling at least one accused unit, incorporating a converted Tessonics PCB, to a customer in Alabama; and (iii) importing accused products into the United States from Canada.

36.     On information and belief, the Alabama customer uses the accused Crafted device to perform the method claimed in the '397 Patent. The accused unit and the accused product offered for sale in the United States incorporate and reproduce Tessonics' copyrighted UDSP and SRS software (and boardlib), and embody Tessonics' misappropriated trade secrets.

37.     On information and belief, the accused Crafted units imported into and sold or offered for sale in the United States bear or convey copyright management information falsely identifying "Crafted Technologies Inc." as the copyright owner of the underlying software, and/or have had Tessonics' copyright management information removed or altered, consistent with the modification of the product-labeling configuration file (CMakeLists.txt) described above.

38.     Because the Individual Defendants had access to, and McReynolds forwarded information concerning, Tessonics' patents and proprietary technology during their employment, Defendants knew of Tessonics' rights and acted willfully and in conscious disregard of those rights. Defendants expected and intended that substantial sales and use of the accused products would occur throughout the United States. Upon information and belief, accused products are manufactured or assembled in Canada and imported into the United States for demonstration, sale, and use.

V.      **COUNT I - COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)**
        **(Tessonics Inc. against all Defendants)**

39.     Tessonics realleges and incorporates by reference the preceding paragraphs.

40.     Tessonics Inc. owns valid, registered copyrights in the Copyrighted Works, which contain original, protectable expression.

12

41.     Defendants had access to the Copyrighted Works through the Individual Defendants' employment, and copied original, protectable elements of the Copyrighted Works, as evidenced by the direct forensic proof of copying described above, including the instruction to reproduce Tessonics' software logic "verbatim," the gitparator comparison and copyright notice substitution, the use of Tessonics repositories as submodules, and the compilation and integration of Tessonics' boardlib source code.

42.     Defendants have reproduced, prepared derivative works from, distributed, and imported into the United States copies of the Copyrighted Works without authorization, in violation of Tessonics Inc.'s exclusive rights under 17 U.S.C. §§ 106 and 602, including by incorporating the copied code into the accused units offered for sale and sold in the United States.

43.     Defendants' infringement was and is willful.

44.     Tessonics Inc. is entitled to recover its actual damages and Defendants' profits attributable to the infringement under 17 U.S.C. § 504(b), together with injunctive relief under 17 U.S.C. § 502 and impoundment and disposition of infringing articles under 17 U.S.C. § 503.

VI.     **COUNT II - VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT — COPYRIGHT MANAGEMENT INFORMATION (17 U.S.C. § 1202)** (Tessonics Inc. against all Defendants)

45.     Tessonics realleges and incorporates by reference the preceding paragraphs.

46.     Copies of the Copyrighted Works conveyed copyright management information ("CMI") within the meaning of 17 U.S.C. § 1202(c), including the copyright notice "Copyright 2021-2024 Tessonics Inc., All Rights Reserved," the name of the copyright owner, Tessonics Inc., and the associated company and support identifiers conveyed in connection with the works (the "Tessonics CMI").

47.     As established by the forensic record, Defendants, without the authority of Tessonics Inc., altered the Tessonics CMI in the copied code. By way of a few examples only, they

altered the code by changing the copyright notice and owner identification from "Copyright 2021-2024 Tessonics Inc., All Rights Reserved" and "Tessonics Inc." to "Copyright 2024 Crafted Technologies Inc., All Rights Reserved" and "Crafted Technologies Inc.," and substituting Crafted's company and support URLs for those of Tessonics.

48.     On information and belief, the accused Crafted products that Defendants have distributed, sold, offered for sale, and imported into the United States bear or convey the false "Crafted Technologies Inc." copyright management information and/or have had the Tessonics CMI removed or altered. This includes the unit sold to a customer in Alabama and the product offered for sale to a customer in this District

49.     Defendants knowingly provided false copyright management information, and distributed and imported into the United States copyright management information that is false, in violation of 17 U.S.C. § 1202(a), with the intent to induce, enable, facilitate, or conceal infringement of the Copyrighted Works.

50.     Defendants, without the authority of Tessonics Inc., distributed, imported for distribution, and made available copies of the Copyrighted Works knowing that the Tessonics CMI had been removed or altered, and knowing or having reasonable grounds to know that doing so would induce, enable, facilitate, or conceal infringement, in violation of 17 U.S.C. § 1202(b).

51.     Defendants altered and falsified the Tessonics CMI in order to conceal that Crafted's products incorporate Tessonics' copyrighted code and to misattribute that code to Crafted.

52.     As a direct and proximate result of Defendants' violations of 17 U.S.C. § 1202, Tessonics Inc. has been injured and is entitled, at its election, to its actual damages and Defendants' profits; to injunctive and other equitable relief, including impoundment, under 17 U.S.C. §

1203(b)(1)–(2) and (6); and to its costs and reasonable attorneys' fees under 17 U.S.C. § 1203(b)(4)–(5).

**VII.   COUNT III - INFRINGEMENT OF U.S. PATENT NO. 9,933,397 (35 U.S.C. § 271)**
**(Tessonics Corp. against all Defendants)**

53.    Tessonics realleges and incorporates by reference the preceding paragraphs.

54.    Tessonics Corp. owns all right, title, and interest in the '397 Patent, including the right to sue and recover for infringement.

55.    The '397 Patent includes only method claims. Therefore, Tessonics is not required to mark covered products with the patent number. Therefore, Tessonics has fully complied with the patent marking statutory requirements.

56.    Defendants have directly infringed and continue to infringe one or more claims of the '397 Patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and selling the accused product within the United States, and importing it into the United States, including by offering the accused product for sale to a customer in this District, and selling an accused unit to a customer in Alabama.

57.    Claim 1 of the '397 Patent is a method claim. The accused Crafted product is a special-purpose ultrasonic non-destructive testing instrument designed and sold to assess the quality of adhesively-bonded joints by performing the method of claim 1. Upon information and belief, Defendants themselves practiced the claimed method during development, testing, demonstration, calibration, validation, customer training, and field deployment activities.

58.    Customers who operate the accused product, including the Alabama customer, directly infringe claim 1 of the '397 Patent under 35 U.S.C. § 271(a). In normal operation, a single customer performs every step of claim 1: the customer sends ultrasonic waves into a reference sample having curved metal plates matching the joint under test and an adhesive layer of varying

thickness, records the reflected waves as a reference waveform (steps (a)–(b)); sends wideband ultrasonic waves into the bonded joint at an assessment point and records the reflected waves (steps (c)–(d)); and analyzes those reflected waves together with the reference waveform to determine an informative parameter, which it compares to a threshold value to assess the quality of the joint (steps (e)–(f)).

59.     On information and belief, the Alabama customer performs all steps of claim 1 when operating the accused Crafted unit. This is confirmed, among other things, by the customer's use of five Tessonics units that perform the same method, reflecting that the customer operates such units to carry out the complete bonded-joint assessment method, including establishing and using the reference waveform.

60.     To the extent any step of claim 1 is performed by Defendants, their agents, or others rather than solely by the customer, that performance is attributable to a single actor for purposes of § 271(a) because it is performed by, or at the direction or control of, Defendants (including through the setup, calibration, instructions, and conditions of use Defendants establish), or as part of a joint enterprise.

61.     Defendants have committed and continue to commit direct infringement of the '397 Patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and selling the accused product within the United States, and importing it into the United States and by themselves performing or testing the claimed method on the accused product. This includes offering the accused product for sale to a customer in this District and selling an accused unit to a customer in Alabama

62.     The Individual Defendants have known of the '397 Patent. Denisov (most recently Vice President of Software Development), McReynolds (the North American sales lead), and Turton (Engineering Manager) each acquired knowledge of the '397 Patent through their long

16

employment with Tessonics developing, selling, and supporting the very ultrasonic bonded-joint inspection products that practice the '397 Patent. Crafted, formed and controlled by the Individual Defendants, is chargeable with that knowledge. At the very least, Defendants were willfully blind to the existence of the '397 patent and/or the fact that their customers' use of the accused product would directly infringe the '397 patent.  Despite a high likelihood that their actions would induce their customers' direct infringement of the '397 patent, Defendants marketed and sold the accused product to their customers for use in an infringing manner. All Defendants have had knowledge of the '397 Patent and of their infringement no later than their receipt of Tessonics' cease-and-desist letter on or about June 8, 2026, and as of the filing and service of this Complaint. The Individual Defendants possessed further actual knowledge of the technology covered by the '397 Patent because they participated in the development, commercialization, support, and sale of products embodying the patented methods during their employment with Tessonics.

63.      Defendants have actively induced infringement under 35 U.S.C. § 271(b). Knowing of the '397 Patent and intending that customers use the accused product in the infringing manner, Defendants took affirmative steps to cause and encourage that use, including by designing the accused product to perform the claimed method, marketing and selling it for bonded-joint inspection, and providing customers with the manuals, specifications, installation, calibration, training, and technical support that instruct and enable customers to operate the unit so as to perform each step of claim 1. The Individual Defendants, as the founders and officers who direct and control Crafted's development, sales, and support activities, personally caused and are personally liable for this inducement.

64.      Defendants have contributed to infringement under 35 U.S.C. § 271(c). The accused product (and its specialized components) constitutes a material part of the invention of

17

claim 1; Defendants know it to be especially made or adapted for performing the patented method; and it is not a staple article of commerce and has no substantial non-infringing use, being a special-purpose instrument for performing the bonded-joint assessment method of claim 1.

65.     Defendants' infringement has been and is willful and deliberate, given the Individual Defendants' knowledge of the '397 Patent arising from their employment at Tessonics and their deliberate use of Tessonics' technology to build and sell the accused product.

66.     Tessonics Corp. is entitled to damages adequate to compensate for the infringement, in no event less than a reasonable royalty, together with lost profits as proven, under 35 U.S.C. § 284; enhanced damages for willful infringement; an injunction under 35 U.S.C. § 283; and a finding that this is an exceptional case warranting attorneys' fees under 35 U.S.C. § 285.

## VIII.   <u>COUNT IV - MISAPPROPRIATION OF TRADE SECRETS (Defend Trade Secrets Act, 18 U.S.C. § 1836)</u>
### (Tessonics Inc. against all Defendants)

67.     Tessonics realleges and incorporates by reference the preceding paragraphs.

68.     Tessonics Inc. owns the trade secrets identified above, which derive independent economic value from not being generally known or readily ascertainable and which relate to products and services used in, and intended for use in, interstate and foreign commerce.

69.     Tessonics Inc. took reasonable measures to keep the trade secrets confidential, as alleged above.

70.     Defendants misappropriated Tessonics' trade secrets under 18 U.S.C. § 1839(5) by acquiring them through improper means and by using and disclosing them without consent, including by copying Tessonics' source code, exfiltrating confidential client, supplier, and licensed materials, and incorporating Tessonics' confidential designs and information into Crafted's competing product. The trade secrets copied and retained by Defendants are of such a nature that Defendants could not develop, market, support, and improve the accused products – especially in

18

the time they were able to do it – without relying upon and using Tessonics' confidential information.

71.     Defendants' misappropriation was willful and malicious.

72.     Tessonics Inc. is entitled to injunctive relief under 18 U.S.C. § 1836(b)(3)(A); damages for actual loss and for unjust enrichment, or in the alternative a reasonable royalty, under § 1836(b)(3)(B); exemplary damages of up to twice the amount of compensatory damages under § 1836(b)(3)(C); and attorney fees under § 1836(b)(3)(D).

IX.     **COUNT V - MISAPPROPRIATION OF TRADE SECRETS (Michigan Uniform Trade Secrets Act, M.C.L. § 445.1901 et seq.)**
**(Tessonics Inc. against all Defendants)**

73.     Tessonics realleges and incorporates by reference the preceding paragraphs.

74.     The information identified above constitutes trade secrets under M.C.L. § 445.1902(d), and Defendants misappropriated those trade secrets within the meaning of M.C.L. § 445.1902(b).

75.     Defendants' misappropriation was willful and malicious.

76.     Tessonics Inc. is entitled to injunctive relief under M.C.L. § 445.1903, damages for actual loss and unjust enrichment (or a reasonable royalty) under M.C.L. § 445.1904, exemplary damages under M.C.L. § 445.1904, and attorney fees under M.C.L. § 445.1905.

X.     **COUNT VI – CONVERSION AND/OR EMBEZZLEMENT (Common Law and M.C.L. § 600.2919a)**
**(Tessonics Inc. against all Defendants)**

77.     Tessonics realleges and incorporates by reference the preceding paragraphs.

78.     Defendants used Tessonics' funds to purchase at least twenty 69-element transducer PCBs. Tessonics Inc. owned and had the immediate right to possess the 69-element transducer PCBs. The at least twenty PCBs ordered are tangible personal property distinct from any trade-secret information.

19

79.     Defendants wrongfully exerted dominion and control over the PCBs inconsistent with Tessonics Inc.'s ownership rights, by taking, diverting, retaining, and incorporating at least one of the PCBs into an accused Crafted unit sold in the United States.

80.     Defendants' conduct constitutes common-law conversion and statutory conversion and/or embezzlement under M.C.L. § 600.2919a, including by converting the PCBs to their own use and by receiving, retaining, or aiding in the concealment of converted property knowing it to be converted.

81.     Tessonics Inc. is entitled to recover the value of the PCBs and its damages, and, under M.C.L. § 600.2919a, three times the amount of actual damages plus costs and reasonable attorney fees.

## XI.     COUNT VII - TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS AND EXPECTANCIES
### (Tessonics against all Defendants)

82.     Tessonics realleges and incorporates by reference the preceding paragraphs.

83.     Tessonics had existing business relationships and reasonable expectancies of economic advantage with customers in the United States, including the Alabama customer to which Tessonics had already sold five ultrasonic inspection units, and the prospective customer in this District to which the accused product was offered for sale.

84.     Defendants knew of these relationships and expectancies. McReynolds, in particular, developed and held these customer relationships during his employment as Tessonics' North American sales lead.

85.     Defendants intentionally and improperly interfered with these relationships and expectancies through wrongful means, including by competing while still employed, by soliciting and diverting Tessonics' customers using Tessonics' confidential information and copied

20

technology, and by offering and selling competing units that incorporate Tessonics' copyrighted software, patented method, trade secrets, and converted hardware.

86.     But for Defendants' conduct, Tessonics would have sold an additional unit to the Alabama customer, consistent with its established course of dealing in which the customer had purchased five Tessonics units, and would have realized other sales and continued business with U.S. customers.

87.     As a direct and proximate result, Tessonics has suffered damages, including lost sales, lost profits, and lost business relationships, in an amount to be proven at trial.

## XII.    COUNT VIII - CIVIL CONSPIRACY
(Tessonics against all Defendants)

88.     Tessonics realleges and incorporates by reference the preceding paragraphs.

89.     The Individual Defendants agreed and combined among themselves—while still employed by Tessonics and before and around the incorporation of Crafted—to accomplish, by unlawful means, the conversion of Tessonics' property and the diversion of Tessonics' customers and business, and later employed Crafted as the instrument of that combination.

90.     In furtherance of the conspiracy, Defendants committed overt acts, including diverting and incorporating the converted 69-element transducer PCB into a unit sold in the United States, and soliciting and selling to Tessonics' U.S. customers using Tessonics' property and information.

91.     As a direct and proximate result of the conspiracy, Tessonics has suffered damages. Each Defendant is jointly and severally liable for the damages caused by the underlying torts committed in furtherance of the conspiracy, including conversion and/or embezzlement and tortious interference.

21

**XIII.   COUNT IX - BREACH OF DUTY OF LOYALTY (Michigan Common Law)**
**(Tessonics against Denisov, McReynolds, and Turton)**

92.     Tessonics realleges and incorporates by reference the preceding paragraphs.

93.     During their employment with Tessonics, the Individual Defendants owed duties of loyalty, honesty, good faith, faithful service, and fair dealing to Tessonics.

94.     While still employed by Tessonics, the Individual Defendants secretly organized, incorporated, and operated Crafted for the purpose of competing directly with Tessonics.

95.     While still employed by Tessonics, the Individual Defendants engaged in conduct adverse to Tessonics, including, without limitation:

a.   forming and capitalizing Crafted;

b.   preparing competing products and technologies;

c.   using Tessonics-owned computers, equipment, resources, and information to benefit Crafted;

d.   taking and diverting PCBs and incorporated at least one of them into the Crafted device that was sold to a customer in Alabama;

e.   obtaining, copying, retaining, and using Tessonics' confidential information and trade secrets;

f.   developing relationships with suppliers and customers on behalf of Crafted;

g.   soliciting or preparing to solicit Tessonics customers and business opportunities;

h.   diverting corporate opportunities belonging to Tessonics; and

i.   taking actions intended to facilitate competition with Tessonics immediately upon their resignation.

96.     The Individual Defendants' conduct constituted improper, secret competition and a breach of their duties of loyalty and faithful service owed to Tessonics.

97.     As a direct and proximate result of the Individual Defendants' breaches of duty, Tessonics suffered damages including lost profits, lost business opportunities, loss of customer

22

relationships, loss of confidential information, investigative costs, and other damages in an amount to be proven at trial.

98.     The Individual Defendants' conduct was intentional, willful, malicious, and undertaken with conscious disregard for Tessonics' rights.

99.     Tessonics is entitled to recover compensatory damages, disgorgement of compensation and benefits received during periods of disloyal conduct to the extent permitted by law, equitable relief, injunctive relief, costs, interest, and such other relief as the Court deems just and proper.

### XIV.   <u>COUNT X – BREACH OF FIDUCIARY DUTY(Michigan Common Law)</u>  (Tessonics against Denisov, McReynolds, and Turton)

100.     Tessonics realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

101.     During their employment with Tessonics, Defendants Denisov, McReynolds, and Turton occupied positions of trust and confidence and were entrusted with Tessonics' most valuable business assets, including confidential information, trade secrets, intellectual property, customer relationships, supplier relationships, technical information, strategic business information, and corporate opportunities.

102.     Defendant Denisov served as Tessonics' Senior Software Engineer and was entrusted with access to, responsibility for, and stewardship over Tessonics' proprietary software assets, including source code, software architecture, software-development repositories, hardware-control libraries, development tools, and other highly confidential technical information.

103.     Defendant Turton served as Tessonics' Engineering Manager responsible for electronics and hardware development and was entrusted with access to, responsibility for, and

23

stewardship over Tessonics' proprietary hardware designs, engineering specifications, product-development activities, supplier relationships, and confidential technical information.

104.   Defendant McReynolds served as Tessonics' principal North American sales representative and was entrusted with significant customer relationships, confidential customer information, customer contacts, pricing information, sales forecasts, sales-pipeline information, business-development opportunities, and strategic business information. In that role, McReynolds exercised substantial discretion on behalf of Tessonics and acted as a trusted representative of Tessonics in dealings with customers and business partners.

105.   By virtue of their positions, responsibilities, authority, access to confidential information, and the trust and confidence placed in them by Tessonics, the Individual Defendants owed fiduciary duties to Tessonics, including duties of loyalty, honesty, candor, good faith, confidentiality, faithful service, and the duty to act in the best interests of Tessonics.

106.   The Individual Defendants further owed fiduciary duties not to misuse or appropriate Tessonics' confidential information, trade secrets, intellectual property, customer relationships, supplier relationships, business opportunities, or other corporate assets for their own benefit or for the benefit of any competing enterprise.

107.   While still employed by Tessonics and while owing fiduciary duties to Tessonics, the Individual Defendants secretly organized, incorporated, capitalized, and operated Crafted for the purpose of competing directly against Tessonics.

108.   While still employed by Tessonics, the Individual Defendants breached their fiduciary duties by, among other things:

    a.   secretly forming and operating Crafted while continuing to serve in positions of trust at Tessonics;

b.  using Tessonics-owned computers, systems, equipment, resources, and information to establish, develop, and advance Crafted;

c.  taking and diverting PCBs and incorporated at least one of them into the Crafted device that was sold to a customer in Alabama;

d.  obtaining, copying, retaining, misappropriating, and using Tessonics' confidential information, trade secrets, source code, technical information, customer information, supplier information, and intellectual property for the benefit of Crafted;

e.  developing competing products and technologies using information and resources entrusted to them by Tessonics;

f.  diverting and appropriating corporate opportunities belonging to Tessonics;

g.  using Tessonics' customer relationships, supplier relationships, goodwill, and confidential business information to advance Crafted's competing business;

h.  concealing from Tessonics their adverse interests, competing activities, conflicts of interest, and efforts to establish and operate Crafted;

i.  forwarding, retaining, and utilizing confidential Tessonics information for purposes adverse to Tessonics' interests;

j.  participating in the development, marketing, offering for sale, and sale of products derived from or incorporating Tessonics' proprietary information and intellectual property; and

k.  otherwise placing their personal interests and the interests of Crafted ahead of the interests of Tessonics while continuing to owe fiduciary duties to Tessonics.

109.  The Individual Defendants' misconduct was intentional, knowing, willful, malicious, and undertaken in conscious disregard of their fiduciary obligations to Tessonics.

110.  As a direct and proximate result of the Individual Defendants' breaches of fiduciary duty, Tessonics has suffered and continues to suffer damages, including, without limitation, lost profits, lost sales, lost business opportunities, loss of customer relationships, loss of supplier relationships, diminution in the value of its intellectual property and proprietary information, investigative expenses, and other damages in an amount to be proven at trial.

111. The Individual Defendants have been unjustly enriched by their breaches of fiduciary duty and have obtained compensation, benefits, business opportunities, revenues, profits, and other advantages through conduct undertaken in violation of their fiduciary obligations to Tessonics.

112. By reason of the foregoing, Tessonics is entitled to recover all damages caused by the Individual Defendants' breaches of fiduciary duty, together with disgorgement and forfeiture of compensation, profits, revenues, and benefits obtained as a result of such breaches to the fullest extent permitted by law.

113. Tessonics is further entitled to equitable relief, including an accounting, constructive trust, restitution, injunctive relief, and such other legal and equitable relief as the Court deems just and proper.

## XV.  PRAYER FOR RELIEF

WHEREFORE, Tessonics respectfully requests that the Court enter judgment in their favor and against Defendants, jointly and severally, and grant the following relief:

- a. Preliminary and permanent injunctive relief prohibiting Defendants and all persons acting in concert with them from:

  - i. infringing the Copyrighted Works;

  - ii. infringing the '397 Patent;

  - iii. violating 17 U.S.C. § 1202;

  - iv. using, disclosing, copying, transferring, retaining, marketing, licensing, exploiting, or otherwise benefiting from Tessonics' trade secrets, confidential information, intellectual property, customer information, supplier information, technical information, business opportunities, goodwill, and proprietary materials; and

  - v. further engaging in the wrongful conduct alleged in this Complaint;

- b. An order requiring Defendants to return, surrender, preserve, and/or destroy all materials embodying Tessonics' copyrighted works, trade secrets, confidential

information, intellectual property, customer information, supplier information, technical information, source code, hardware designs, and other proprietary materials, including impoundment under 17 U.S.C. §§ 503 and 1203;

c.  An order requiring Defendants to identify all persons and entities to whom any Tessonics' confidential information, trade secrets, source code, copyrighted materials, technical information, customer information, supplier information, or proprietary materials were disclosed, transferred, distributed, or made available;

d.  An order permitting expedited discovery, including forensic inspection, imaging, preservation, and examination of computers, repositories, cloud storage, source-code repositories, mobile devices, storage media, electronically stored information, and accounts reasonably believed to contain evidence relating to Tessonics' claims;

e.  An order requiring Defendants to deliver up all Tessonics' property and hardware within their possession, custody, or control, including the converted 69-element transducer printed circuit board and any products incorporating such property;

f.  An order requiring Defendants to provide a full accounting of all revenues, profits, sales, compensation, benefits, distributions, business opportunities, and other advantages obtained directly or indirectly as a result of the conduct alleged in this Complaint;

g.  Tessonics Inc.'s actual damages and Defendants' profits attributable to copyright infringement pursuant to 17 U.S.C. § 504;

h.  For Defendants' violations of 17 U.S.C. § 1202, actual damages and Defendants' profits or, at Tessonics Inc.'s election, statutory damages as permitted by law;

i.  Damages adequate to compensate for infringement of the '397 Patent, including lost profits, reasonable royalty damages, enhanced damages for willful infringement, and all other relief available under 35 U.S.C. §§ 283–285;

j.  Damages for trade-secret misappropriation under the Defend Trade Secrets Act and the Michigan Uniform Trade Secrets Act, including actual loss, unjust enrichment damages as authorized by those statutes, reasonable royalty damages, exemplary damages, and all other relief available under those statutes;

k.  Damages for conversion and embezzlement, including treble damages, attorney fees, costs, and all other relief available under M.C.L. § 600.2919a;

l.  Damages for tortious interference with business relationships and expectancies and for civil conspiracy, including all consequential, economic, and compensatory damages caused by Defendants' conduct;

m.  Damages for breach of duty of loyalty and breach of fiduciary duty, including lost profits, lost sales, lost business opportunities, loss of customer relationships, loss of supplier relationships, diminution in value of Tessonics' intellectual property

27

and proprietary information, investigative costs, remediation costs, and all other damages proven at trial;

n. Disgorgement and forfeiture of compensation, salary, bonuses, commissions, profits, revenues, distributions, equity interests, business opportunities, and other benefits obtained directly or indirectly through Defendants' breaches of duty of loyalty, breaches of fiduciary duty, infringement, misappropriation, conversion and/or embezzlement, and other wrongful conduct;

o. Imposition of a constructive trust over all revenues, profits, products, intellectual property, customer relationships, business opportunities, equity interests, and other assets derived from, traceable to, or resulting from Defendants' wrongful conduct;

p. Restitution, accounting, and all other equitable relief available under federal and Michigan law;

q. A finding that Defendants' conduct was willful, malicious, deliberate, and in conscious disregard of Tessonics' rights;

r. A finding that this is an exceptional case and an award of attorneys' fees, expert fees where authorized, costs, and expenses pursuant to 35 U.S.C. § 285, 17 U.S.C. § 1203, 18 U.S.C. § 1836, M.C.L. § 445.1905, M.C.L. § 600.2919a, and any other applicable authority;

s. Prejudgment interest, post-judgment interest, taxable costs, and all recoverable litigation expenses; and

t. Such other and further legal, equitable, declaratory, injunctive, accounting, restitutionary, and monetary relief as the Court deems just and proper.

## XVI.   <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs Tessonics Inc. and Tessonics Corp. demand a trial by jury on all issues so triable.

Dated: June 15, 2026

Respectfully submitted,

**CARLSON, GASKEY & OLDS, P.C.**

By: /s/Brian S. Tobin
John E. Carlson (P51379)
Brian S. Tobin (P67621)
400 West Maple Road, Suite 350
Birmingham, Michigan 48009
Telephone: (248) 988-8360
jcarlson@cgolaw.com
btobin@cgolaw.com

***Attorneys for Plaintiffs Tessonics Corp. and Tessonics Inc.***